# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **STEVEN F. CIEROCKE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **7:12-cv-2813-AKK** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Steven F. Cierocke ("Cierocke") brings this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  Doc. 1.  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence, and, therefore, **AFFIRMS** the decision denying benefits.

## I.  Procedural History

Cierocke filed his applications for Title II disability insurance benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") on October 10 and 16, 2008, respectively, alleging a disability onset date of January 1, 2007,[1] due to a spinal injury, Hepatitis C, cirrhosis of the liver, depression, and being a recovering alcoholic.  (R. 156-162, 190, 198-99).  After the SSA denied his applications on January 12, 2009, Cierocke requested a hearing.  (R. 78-82, 87-92).  At the hearing on July 16, 2010, Cierocke was 50 years old, with a GED and motorcycle mechanic training he completed in 2002 and 2003, respectively, and had past relevant work in construction as a roofer-steel fabricator and as an autobody repair worker.  (R. 182, 186, 199, 206).  Cierocke has not engaged in substantial gainful activity since his January 1, 2007, alleged onset date.  (R. 198-99).

The ALJ denied Cierocke's claims, which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-6, 16-34).  Cierocke then filed this action pursuant to 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial

---

[1] Cierocke initially claimed an onset date of May 3, 1991.  (R. 198).  However, he amended this date during the hearing before the ALJ.  (R. 41, 190, 198-99).

evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield

automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

### IV.  The ALJ's Decision

In performing the five step analysis, the ALJ initially determined that Cierocke met the insured status requirements of the Act through June 30, 2011. (R. 21). Moving to the first step, although Cierocke worked for at least 18 months after his alleged disability onset date, the ALJ found that Cierocke's work did not rise to the level of substantial gainful activity and that Cierocke met Step One. *Id*. Next, the ALJ found that Cierocke satisfied Step Two because he suffered from a severe combination of impairments including: "Degenerative Disc Disease, cervical, with cervicalgia; Degenerative Disc Disease, lumbar spine, with lumbago; Hepatitis C Infection; Depression; Substance Abuse, in remission, by self report." *Id*. The ALJ then proceeded to the next step and found that Cierocke failed to satisfy Step Three because he "does not have an impairment or

combination of impairments that meets or medically equals one of the listed impairments[.]" (R. 22.) Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Cierocke

> has the residual functional capacity ["RFC"] to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about six hours, and sit for up to six hours in an eight-hour work day, all with normal breaks, consistent with the performance of light work...except as follows: The claimant is limited to jobs which involve only occasional postural activities of stooping, kneeling, crouching, or crawling, with only occasional climbing of ramps and stairs, but no climbing of ropes, ladders, or scaffolds. He is further limited to jobs that require only limited reaching with the bilateral upper extremities, and which avoid concentrated exposure to temperature extremes, humidity, unprotected heights or hazardous machinery. He can perform only simple, routine, and repetitive tasks as a result of pain as well as the side effects from prescribed medications. He is also limited to jobs which do not require close interpersonal contact.

(R. 24). In light of Cierocke's RFC, the ALJ held that Cierocke is "unable to perform any past relevant work." (R. 28). Lastly, in Step Five, the ALJ considered Cierocke's age,[2] education, work experience, and RFC and determined "there are jobs that exist in significant numbers in the national economy that

---

[2] The court notes that the ALJ incorrectly stated that Cierocke "was born on March 30, 1960, and was 31 years old, which is defined as a younger individual (age 18-49), on the amended alleged disability onset date." (R. 28). Cierocke was actually 47 years old. However, because Cierocke was still a "younger individual" under the Act, this misstatement was harmless error.

[Cierocke] can perform." (R. 29). Therefore, the ALJ found that Cierocke "has not been under a disability, as defined in the Social Security Act, from January 1, 2007, through the date of this decision." (R. 30).

## V.  Analysis

The court turns now to Cierocke's contentions that the ALJ erred by failing to (1) determine that Cierocke's RFC postural restrictions comport with "sedentary work" and that Cierocke meets the Medical Vocational Rule (MVR) 201.14, (2) assess Cierocke's depression and make RFC findings based on his mental abilities, and (3) fully develop the record by obtaining a medical source opinion by either a medical expert or consultative examination. *See* doc. 10 at 5-10. The court addresses each contention in turn.

### A. **Alleged failure to determine that Cierocke can perform only sedentary work and to find that Cierocke meets MVR 201.14**

Cierocke's first contention of error is that the ALJ failed to restrict him to sedentary work and, correspondingly, that he met MVR 201.14 under "Table No. 1 -Residual Functional Capacity: Maximum Sustained Work Capability Limited to Sedentary Work as a Result of Severe Medically Determinable Impairment(s)." C.F.R. Appendix 2 Subpart P of Part 404. The "grid" dictates a finding of disability under MVR 201.14 for an individual who is limited to sedentary work,

closely approaching advance age (defined as ages 50-54), has a high school education or more, with past work experience described as skilled or semiskilled, and with transferrable skills. *See id*. Thus, as it relates to Cierocke, the key issue to resolve is whether the ALJ erred in finding that Cierocke's RFC was limited to a range of light work rather than sedentary work.

The court notes that the responsibility for assessing the RFC falls on the ALJ, and, in doing so, the ALJ must consider "all the relevant evidence in [the claimant's] case record." 20 C.F.R. §§ 416.945(a)(1); 416.946(c). Consistent with this charge, the ALJ reviewed Cierocke's medical record and determined that, physically,

> [e]xcept for some left ankle numbness, the most recent treating source examinations yielded normal results, including a normal gait, no neurological deficits, normal reflexes, sensation, strength, coordination, mood and fine motor function, with no edema in the extremities. A hip x-ray was also normal, and a lumbar MRI revealed only mild degenerative changes.

(R. 26). Critically, the ALJ noted that

> these findings need to be viewed in light of the fact that the claimant worked until at least September 2008 as an auto body repair worker, on a part-time basis, for nearly two years after his amended alleged onset date...[and] the vocational expert [testified that] this work was performed at the medium level of exertion. Indeed, the extensive range of the claimant's reported activities similarly runs counter to the claimant's allegation of disabling functional limitations. Indeed, these activities, as amply documented in the record, would support a

> finding that the claimant actually has *fewer* exertional, postural, or other limitations than is stated in the above-delineated residual functional capacity assessment.

(R. 26-27) (emphasis in original). The ALJ concluded that Cierocke's "exertional, sitting, standing, and walking limitations were all consistent with the performance of light work...[and] were included to provide the claimant with the greatest benefit of the doubt to the extent that the limited evidence would allow." (R. 27). In short, while the ALJ found that Cierocke could perform light work, he noted that the record actually supported a range of work with fewer limitations, closer to the medium level of exertion Cierocke performed as an auto body repairer <u>after</u> his alleged disability onset date of January 2007.

In reaching this finding, the ALJ reviewed Cierocke's treatment records and determined that Cierocke's impairments limited him, at most, to light work. *See* (R. 24-28). For instance, regarding the liver disorder, the ALJ noted that Howard Brown, M.D., a gastroenterologist, obtained a liver biopsy in October 2008 which revealed a Hepatitis C infection and early fibrosis, consistent very mild cirrhosis. (R. 327, 344-46). Dr. Brown opined that the condition is reversible with treatment and referred Cierocke to the University of Alabama at Birmingham (UAB)'s Kirklin Clinic. *Id*. When Cierocke followed up with UAB in May 2009, he "denied any signs or symptoms of decompensated liver disease [and] never had

any GI bleed, hepatic encephalophathy, or paracentesis [but] did report off and on right upper quadrant pain." (R. 409). Consequently, Mohamad Alsibae, M.D. recommended that Cierocke proceed with the treatment. *Id*.

As the ALJ noted, "the medical evidence falls silent regarding claimant's liver function after May of 2009, and there is little indication that it has worsened beyond the early and mild stages..." (R. 25). Nonetheless, in light of the Hepatitis C, the ALJ limited Cierocke from working closely with others, noting that "the limitation relating to the claimant's inability to work in close proximity to others was added [to the RFC] by the undersigned out of an abundance of caution in view of the Hepatitis C infection..." which others could contract. (R. 25). As is evident, nothing in the record shows that Cierocke's Hepatitis C or liver dysfunction restricted him to sedentary work. In fact, the substantial evidence establishes that Cierocke can work at a level higher than the light work limitation the ALJ gave him.

The rest of the medical evidence also supports the ALJ's findings. Regarding Cierocke's cervical and back disorders, the ALJ noted a relatively sparse treatment record, and that Cierocke visited Brian S. Claytor, M.D. of the University Orthopedic Clinic complaining of chronic neck pain in May 2008. (R. 25, 351). However, Dr. Claytor's physical exam revealed that Cierocke walked

and stood normally without a limp or instability, had full strength, except for pain and a limited range of motion observed in the neck and cervical spine. (R. 351). Dr. Clayton opined that Cierocke had chronic mechanical neck pain, but without any evidence to suggest neurologic dysfunction, and that he had "little to offer" Cierocke. *Id*. Consequently, he recommended that Cierocke see a pain management specialist. *Id*.

Shortly thereafter, Cierocke went to Bama Urgent Care complaining of chronic pain in the neck, upper extremities and weakness in the right hand. (R. 26, 353). Stephen Roberts, D.O. assessed Cierocke and noted that on physical examination, Cierocke had "4+/5 to 5/5 strength involving his right upper extremity" and "[n]o discernible interosseus muscle weakness." (R. 353). Dr. Roberts diagnosed Cierocke with severe degenerative disk disease and degenerative joint disease of the cervical spine, status post traumatic injury, muscle spasm involving the cervicothoracic region, and chronic persistent pain. *Id*. Dr. Roberts recommended referring Cierocke to pain management, but advised "that Lortab is a totally inappropriate method of treating chronic day in and day out pain." *Id*. Consequently, Dr. Roberts referred Cierocke to Anodyne Research Services in June 2008 for pain management, where Eugene Mangieri, M.D. treated Cierocke. Dr. Mangieri prescribed methadone for Cierocke's pain and treated

Cierocke without any changes in dosage for two months. However, in September 2008, Dr. Mangieri stopped treating Cierocke after Cierocke tested positive for marijuana on multiple lab reports. (R. 278, 284, 298).

The last treatment records provided are from Frederick Graham, M.D., who treated Cierocke from June to September 2009. Dr. Graham noted that while Cierocke had "numbness at L4 to the medial ankle on the right side," Cierocke nonetheless had full range of motion and his strength appeared normal. (R. 411-13). An x-ray and MRI of Cierocke's spine revealed degenerative disc disease in the lower three lumbar levels with broad-based disc bulge at L4-5 that was slightly to the right, and no evidence of neural impingement or definite focal herniation. (R. 413-16). Consequently, Dr. Graham concluded that surgical intervention was unnecessary and instead continued Cierocke on his current medications. *Id*.

In light of the medical record, and Cierocke's reported daily activities, including his auto mechanic work performed <u>after</u> his alleged onset date, the ALJ determined that Cierocke had a physical RFC to occasionally lift and/or carry 20 pounds, frequently lift 10 pounds, and sit and/or walk for about 6 hours in an 8 hour workday. (R. 395-402). Consequently, the ALJ found that Cierocke could

perform a limited range of "light work," defined in 20 C.F.R § 404.1567(b)[3] as "only occasional postural activities of stooping, kneeling, crouching, or crawling,...with only occasional climbing of ramps and stairs, but no climbing of ropes, ladders, or scaffolds...[and] only limited reaching with the bilateral upper extremities..." (R. 24).

Based on the court's review of the record as a whole, including the opinions of Cierocke's physicians and his own work history, the ALJ had sufficient evidence from which to develop the RFC. Moreover, ultimately Cierocke has the burden of proving that he is disabled. *See* 20 C.F.R. § 416.912(c). To the extent Cierocke claims he is disabled because he is allegedly limited to sedentary work, he failed to make that showing here. In fact, his own testimony about the work he did after his alleged onset date belies his contentions that he is limited to sedentary work. Therefore, the substantial evidence supports the ALJ's RFC determination and conclusion that Cierocke can perform light work. Accordingly, the court finds that Cierocke does not meet the qualifications for MVR 201.14.

---

[3] 20 C.F.R. § 404.1567(b) provides that "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

### B. Alleged failure to assess Cierocke's depression and to include mental RFC findings

Cierocke's next contention of error is that the ALJ failed to assess his depression and to include mental RFC findings. Doc. 10 at 6. Based on the sparse medical record, the ALJ determined that Cierocke could "perform only simple, routine, and repetitive tasks" and "limited [him] to jobs which do not require close interpersonal contact." (R. 24). Cierocke challenges this assessment and contends that "[t]he ALJ's mental RFC findings consisting of no close interpersonal contact are inadequate because they are not specific enough to translate to quantifiable vocational restrictions or to meet the requirements of SSR 96-8p." Doc. 10 at 7. The court disagrees.

Again, the ALJ is responsible for assessing the RFC. Consistent with the charge to consider "all the relevant evidence in [the claimant's] case record," 20 C.F.R. §§ 416.945(a)(1); 416.946(c), the ALJ reviewed Cierocke's medical record regarding his mental condition, noting it

> was especially sparse [since] there is no evidence of any hospitalizations relating to mental symptoms, no tests of cognitive function, no evidence documenting any episodes of decompensation of *any* duration, and no visits to any psychiatrist, psychologist, social worker, therapist, or speaking at a broader level, any mental health professional at all. The most we are able to say from the treatment records is that he was noted as having a normal mental state at a clinic visit in May of 2008...but alleged depression when he presented at Anodyne Research Services in June of 2008...was diagnosed with

>depression secondary to physical symptoms in a single encounter with Steven A. Roberts, D.O., at an urgent care clinic...and that his depression is characterized by Mohamad R. Alsibae, M.D., a treating physician, as "very mild or slight" in nature and well controlled, so that there was no need to change his existing medications in any way.

(R. 22-23) (emphasis in original).  From this excerpt, it is clear the ALJ assessed Cierocke's depression.  Specifically, when Dr. Alsibae treated Cierocke in May 2009, he noted that Cierocke "is socially active" and has "[d]epression, well controlled, continue current management.  We will make no changes.  The patient never had been hospitalized or never had any significant problems with depression and with this very mild or slight depression, controlled on medicine, I do not see any contraindication."  (R. 409-10).  Moreover, regarding Cierocke's alleged polysubstance disorder, while lab reports indicated Cierocke had recent usage of marijuana, Cierocke continuously denied any illicit drug use.  Therefore, the ALJ found that "viewing the record in its entirely, there is no pattern that can be discerned that would lead to a finding that the claimant has an ongoing problem with polysubstance use, or that he is not at this time in a state of remission with respect to this mental disorder."  (R. 27).

The ALJ also gave "significant weight" to the psychiatric review technique assessment performed by Robert Estock, M.D., a state agency medical consultant, finding that his opinion was consistent with the record as a whole.  (R. 23, 28,

381-394). Dr. Estock opined that Cierocke had depression, but that it did not satisfy the diagnostic criteria necessary to be considered disabling. (R. 384). According to Dr. Estock, Cierocke had only moderate limitations in his restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation of an extended duration. (R. 391). Also, Dr. Estock opined that Cierocke was "not significantly limited" in his ability to remember locations and work-like procedures, to understand and remember very short and simple instructions, to carry out very short and simple instructions, to perform activities within a schedule maintain regular attendance and be punctual within customary tolerances, to make simple work-related decisions, to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to ask simple questions or request assistance, to accept instructions and respond appropriately to criticism from supervisors, to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, to respond appropriately to changes in the work setting, to be aware of normal hazards and take appropriate precautions, to travel in unfamiliar places or use public transportation, and to set realistic goals or make plans independently of

others.  (R. 403-04).  Overall, Dr. Estock concluded that Cierocke "may have moderate difficulty handling more detailed instructions but likely can handle even these if they are broken down into simple 1-2 step tasks and he is given adequate rehearsal."  (R. 405).

As the ALJ noted, the medical evidence is sparse concerning Cierocke's depression, except that he took medications for the condition.  Based on the record, the ALJ determined that Cierocke's depressive disorder did not prevent him from performing light work and, in particular, had not prevented him from working as an auto body repairer after his alleged disability onset date.  There is simply nothing in the record to contradict the ALJ's finding.  To the contrary, the substantial evidence supports the ALJ's RFC determination.  Ultimately, Cierocke failed to show what specific findings the ALJ should have made regarding Cierocke's mental work-related functioning, and how these findings would have changed the ultimate result.  Accordingly, the court finds no error in the ALJ's determination.

### C.   Alleged failure to fully develop the record to obtain either medical expert or consultative examination

Cierocke's last contention of error is based on his claim that "the ALJ should have developed the record to obtain an MSO by either ME [medical expert] or CE [consultative examination] in light of the paucity of evidence for almost a

year prior to the ALJ's decision." Doc. 10 at 9. While an ALJ "has a basic duty to develop a full and fair record," *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003), the ALJ is not obligated to automatically obtain testimony from a medical expert. Rather, the ALJ "*may* ask for and consider the opinion of a medical . . . expert concerning whether ...[a claimant's] impairment(s) could reasonably be expected to produce [his or her] alleged symptoms." 20 C.F.R. § 404.1529 (emphasis added). Critically, the ALJ is not required to order additional medical opinion when, as here, the record contains sufficient evidence for the ALJ to make a disability determination. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citation omitted). Indeed, the ALJ considered Cierocke's entire medical record available, as discussed *supra*, to reach a finding that Cierocke is not disabled. Accordingly, based on this court's review of the record, the ALJ committed no error by failing to obtain another medical source opinion from a medical expert or a consultative examiner since the findings the ALJ made concerning his evaluation of the medical reports were sufficiently extensive for the ALJ to make a RFC determination and to find that Cierocke was not disabled. Moreover, Cierocke failed to show how obtaining medical expert testimony would have aided the ALJ to make an informed decision, and how the purported failure to develop the record prejudiced him. *See* 20 C.F.R. §

416.912(c). Therefore, the substantial evidence supports the ALJ's RFC determination and finding that Cierocke is not disabled.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Cierocke is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**Done** the 26th day of March, 2013.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE